# Commonwealth *v.* Birriolo.

197    371
23 SC  518

*Criminal law—Murder—Murder in the first degree—Evidence.*

A verdict of guilty of murder in the first degree will be sustained against a husband for the killing of his wife where the evidence shows that while the husband and wife were alone in the kitchen of their house, the husband lighted his pipe by means of a piece of paper which he ignited from the stove, and immediately thereafter his wife's clothes caught fire, and she was burned so that she subsequently died from the burns; that while she was still burning she declared that her husband had set her on fire, and shortly before she died she signed with her mark a declaration to the same effect; that some time prior to her burning her husband had in the presence of her daughter deliberately set fire to his wife while lighting his pipe, and that the daughter put this fire out, and that on other occasions he had brutally struck her and threatened her life.

Argued Oct. 8, 1900. Appeal, No. 200, Jan. T., 1900, by defendant, from judgment of O. & T. Tioga Co., Sept. T., 1899, No. 1, on verdict of guilty of murder in the first degree in case of Commonwealth v. Isaac Birriolo. Before McCollum, C. J., Mitchell, Dean, Fell, Brown, Mestrezat and Potter, JJ. Affirmed.

Indictment for murder. Before Mitchell, P. J.

At the trial it appeared that on and before July 5, 1899, the prisoner lived with his wife, two daughters, Angela and Bellamont, and his son, Bibo, in Blossburg, Tioga county. The daughters were aged twenty-two and twenty, respectively, and the son nineteen years. On July 5, 1899, between the hours of 12 and 1 o'clock in the afternoon when the prisoner and his wife were alone in the kitchen of the house, the prisoner lighted his pipe by a piece of paper ignited at the stove. Immediately thereafter the wife's clothes took fire. She rushed from the house and attracted the attention of neighbors, who hurried to her rescue. The woman was terribly burned. She declared to her rescuers immediately, and subsequently to her children, when they returned, that the prisoner had set her on fire. The wife died on July 17. On the night of July 16, she sent for a lawyer and a priest, and made a declaration which was reduced to writing, that her husband had set her on fire. She made her

mark to this writing and it was witnessed by the lawyer and two neighbors.

The evidence showed that at the time of the burning the prisoner used brutal language to his wife and those who were helping her; that for a long time prior to the burning he treated his wife brutally and threatened her life, and that he was enamored of a certain Mrs. James.

Counsel for the commonwealth proposed to show by Bellamont Birriolo that about three or four months prior to July 5, her mother was burned one day while the witness was at home, and her father and mother also at home, about the noon hour; that the witness was in one part of the kitchen washing, or doing some similar act with her back to her father and somewhat to her mother; her father, the defendant, had just got through dinner and got up and lit his pipe, as was his custom, and just about the time he got behind her mother she happened to turn to go to some other part of the room for some purpose or other, and saw her father take the paper with which he had lit his pipe and touch the flame to the back of her mother's dress, and that he carried the paper out doors afterwards. As soon as she saw it she ran to her mother and put out the fire and said to her father, "What do you mean?" and that he replied that "The paper had slipped out of his hand." This is for the purpose of throwing light upon the intention with which the defendant committed the burning on July 5, and for the further purpose of showing an assault by this defendant of a similar nature; and to show the intention with which it was done on this last occasion, that the jury may determine from this the intention and motive of this defendant on the occasion now being tried, and also, to show that the act now charged was intentional and wilful, and not an accident, and to prove motive.

Counsel for the defendant object to the evidence proposed to be given for the reason that it is incompetent and irrelevant on the trial of the issue now before the jury.

That it is an attempt to get a separate, independent and distinct offense and transaction to the jury. It being incompetent, as counsel for the defendant believe to give any evidence of a separate and substantive offense; that the question on trial here is whether the defendant did set fire to and burn

his wife on July 5, as alleged in the indictment, and it is entirely immaterial and incompetent to prove, or offer to prove any assault or attempt to burn upon any other or prior dates; and for the further reason that the offer does not show about when this attempted assault was made, or attempted to be made.

The Court: We must overrule these objections and admit this evidence for the purposes for which it is offered. Not to prove a distinct substantive offense at all.

Mr. Cameron: Do I understand this evidence is admitted for the purpose of showing intent on the part of the defendant?

The Court: That is one purpose stated in the offer. The ruling is upon the offer as it is made, Mr. Cameron.

To which ruling by the court counsel for the defendant except and at their request this bill is sealed. [2]

Counsel for the commonwealth propose to show by this witness and others that upon the occasion referred to in this question and at other times, the defendant committed assault and battery upon the person of his wife, pounding her with a cane and blackening her eyes and side, and at another time the witness was called to protect his sister, Angela; that he found his father pounding her and took him away from her; that he threatened if they did not stop talking about them that he would kill them all, and that upon all of these occasions the trouble that Mr. Birriolo was complaining of was the talk of the family about him and Mrs. James. This is offered for the purpose of showing the relations existing between Mr. Birriolo and his family, particularly his wife; and for the further purpose of showing the relation between Mrs. James and the defendant; and for the purpose of showing motive on the part of the defendant; and a part of the evidence proposed in the offer is for the purpose of showing malice.

Objected to as incompetent and improper.

The Court: The objection is overruled and the evidence admitted for the purpose for which it is offered.

To which ruling by the court counsel for the defendant except and at their request this bill is sealed. [3]

Counsel for the commonwealth propose to show by the witness upon the stand and by at least one other witness, that on the day of the burning in a conversation with Mrs. Birriolo as

to how this burning occurred, the deceased said to her son, the witness now upon the stand, that "his father had finished her this time, that she could not live, that she would die this time," and immediately proceeded to tell the son how he set her on fire. This is offered as a declaration made by the deceased at a time after the injury from which she did die, and made at a time and immediately following the expression of her opinion of her condition, and in stating to her son on his coming home that "she was going to die." We propose to show that the conversation now offered in evidence occurred at 2 o'clock on the afternoon of the burning.

Counsel for the defendant object to the evidence offered for the reason that it is too indefinite as to time. That there is no evidence to go to the jury that she was informed by any person who could speak authoritatively as to her condition, "that she was going to die." That the evidence is that she continued to improve under the treatment she was receiving up to the sixth day after this alleged conversation. It cannot be given in evidence as a dying declaration and it is too indefinite as to time, therefore, we say it is incompetent, irrelevant and immaterial.

The Court: We think we must not sustain these objections to this evidence. The real foundation in the eye of the law for the admission of dying declarations lies in what is substantially set out in the offer proposed here, in the belief of impending death likely to result from the injury under investigation, the belief of the person injured, and we do not understand that the law requires that belief should be founded upon the expert opinion of a physician, although that very likely in many cases would be an inducement to such a belief. Nor, should evidence of this character be excluded because the death is delayed for any length of time, if the death resulted from the injury in question. We think the law permits evidence of this character to be given to the jury, and that it has the same force under the law as it would have if the deceased person were alive and called and sworn as a witness testifying to the facts in question. The court overrules the objections and admits the evidence.

To which ruling by the court counsel for the defendant except and at their request this bill is sealed. [4]

Counsel for the commonwealth propose to show by Bellamont Birriolo on the stand, and others, that on the evening preceding the death of Mrs. Birriolo, she asked the witness to go for a lawyer and to go for Dr. Lucas, the priest, stating that she could not get well; that they were sent for and came there, and Dr. Lucas administered to this woman the last rites of the church to which she belonged, and that she then made a declaration to the lawyer, Mr. Hughes, which was taken down in writing and subscribed to by two witnesses other than the family and read to the dying woman, and when read to her she was again asked if that was right, and that she said, " That is right, " and holding her hands together exclaimed, " God knows that is right." This is offered preliminary to making competent the dying declaration that we propose to offer hereafter, the only way in which the court could determine whether the paper itself is competent.    And to further show in the same connection that she was in her right mind, rational and understood what she was doing.

Counsel for the defendant object to the evidence offered for the reason that it is already in evidence that she did not die for some time after that.    It is also in evidence that she had a physician attending her all that time, and they do not propose in their offer to show her condition, or that any person instructed her that she was in imminent danger of death; neither do they propose in their offer to show what her physical condition was at the time, the mere fact that she stated that she thought she was going to die ought not in a case of this kind to affect the rights of the defendant.

The Court: We will listen to this evidence proposed and dispose of the question of the admissibility of the evidence that will follow from the proof itself.

Mr. Cameron: We simply suggest here that as this evidence is offered entirely for the court, that it might be heard by the court without the jury.    We think it is important to guard this evidence and keep it from the jury.

The Court: The jury may be taken out by the tipstaves and we will dispose of this matter in the absence of the jury, the defendant remaining in court. [5]

Counsel for the commonwealth offer in evidence the dying declaration of Mrs. Birriolo.

Counsel for the defendant object to this paper being received in evidence and read to the jury.

1. Because it appears by the evidence of Mr. Hughes that a portion of it is made up of questions asked by Mr. Hughes, an attorney in this case for the commonwealth, to the deceased, through an interpreter and then told to the interpreter and reduced to writing by Mr. Hughes in a narrative form. That the statement omits the questions and the answers, and simply embodies the narration as probably understood by Mr. Hughes at that time.

2. That this paper states the belief of the decedent as to the intentions of the defendant in doing the act complained of, which as we believe is not competent, and would not be competent for her so to testify were she living and upon the witness stand.

3. That a statement taken in this way through the medium of an interpreter talking in a foreign language and reduced to our own, should contain the questions and answers in order that the counsel for the defendant might understand definitely what was said to the deceased and the replies she made thereto.

4. That the paper offered in evidence does not contain the questions upon which the replies were predicated and is therefore not a full statement of what was said by Mr. Hughes, who asked the questions and the decedent who answered them. The paper contains four distinct statements, while the questions in response to which these inquiries were made are not given. The witness, Mr. Hughes, who reduced the paper to writing, having testified that what she said was in reply to questions asked by him, and the paper not containing these questions, but simply the reply, the paper itself does not contain what was said by Mr. Hughes to Mrs. Birriolo, and on that account is not a full and complete narrative, and on that account is incompetent.

Mr. Dunsmore : We were about to state that the part of this statement in brackets (where there is a belief expressed) we think, to save any question, that part of it ought to be omitted; but we say the rest is competent.

The Court : We think the words in brackets in this paper should not be admitted in evidence, for declarations of this kind are admitted in evidence only to the extent to which a

witness, if living and called upon the stand might testify to; at all events we think there is very great doubt if this should be admitted, and it is excluded. With this exception, under the proof made and as a part of the statement made in the paper itself, we are fully satisfied that this writing is admissible in evidence, with the exception before stated of the words in the brackets. The law requires that before any such dying declaration shall be admitted in evidence that the court to whom the question of the admissibility of the evidence is submitted must be satisfied that the statement in question is made in the belief of impending death on the part of the person deceased. The law does not require that that shall appear in the paper itself, but the court may be satisfied by other evidence that such is the condition of mind of the deceased person. We would be satisfied by the proof of the circumstances in this case outside of what is stated in the paper itself, that this deceased woman was in that condition of mind that would require us to admit this statement in evidence, if the statement itself did not contain a declaration on that subject.

The objections to the admission of this paper now offered in evidence are overruled and the paper may be read to the jury, excluding the portion in brackets.

To which ruling by the court counsel for the defendant except and at their request this bill is sealed. [6]

The court charged in part as follows:

[It does not appear by the evidence that there was at that time, when this burning must have taken place, any other person in these premises other than the wife and this defendant, unfortunately so for the commonwealth, if the law had not provided for such an emergency in any manner at all; as one of the actual witnesses as to what occurred on that occasion is no more and could not have been brought here in court to testify. And it is because of that principle that the rule of law has been established, that has been invoked in this case, allowing the ante-mortem statements of persons who die from injuries to their persons to be given in evidence, and to have the same effect, under the law, as to the facts about the occurrence of the injury, that the testimony of the person deceased would have if that person were in court and upon the witness stand

giving in testimony to the same effect.   So we have permitted
the commonwealth in this case to give sundry statements of
this deceased woman in evidence by the mouths of other wit-
nesses as proof in this case that the law allows; and all of that
evidence is for your consideration.   As we have said, while
there is no other living witness to that transaction, this de-
ceased woman speaks of it through the mouths of others, who
are really in effect taking her place before the court and jury
in this matter against her husband, the defendant, charged with
killing her by burning her.   So you will observe there is a con-
flict between the one and the other (speaking of her as a wit-
ness here now), as to whether this man is guilty of setting fire
to this woman by burning her up, or by burning her so her life
would be shortened or destroyed.   We shall speak of that
again in some remarks that we shall make later on; but we
regard that as an important point in the investigation of this
matter by the jury in determining what is the fact about this
matter; for that is what the jurors are to determine, and with
the court rests the responsibility for what the law is applicable
to the case.   In considering what weight you should give to
the testimony of these two witnesses, the one here and the de-
ceased, you should consider their relations to this matter and
the circumstances under which they give in their testimony, so
to speak.   As to this deceased woman, of course you under-
stood the proof (and that was necessary in order that the state-
ment should be admitted in evidence at all), that she was then
under the belief that death was impending over her.   That
was a matter that had to be addressed to the consciousness of
the court, and if the court had not become satisfied on the sub-
ject, that she was in that belief at that time, this written state-
ment should not have been admitted as evidence and read to
the jury.   But as we have meant to be understood, we think
that is not the case trying here, because we must take all the
evidence as to the statements of the deceased woman as part
of the case; and as we remember it, one of those statements
was distinctly that this defendant did, in fact, light the clothes
of the woman, and so we think it is a part of the case of the
commonwealth that you are to dispose of.]   [7]

Verdict of guilty of murder in the first degree upon which
judgment of sentence was passed.

*Errors assigned* among others were (2–6) rulings on evidence, quoting the bill of exceptions; (7) portions of charge as above, quoting it.

*J. W. Mather* and *Jerome B. Niles,* with them *Walter T. Merrick,* for appellant, cited, as to dying declarations, Kane v. Com., 109 Pa. 541, Kilpatrick v. Com., 31 Pa. 198, State v. Martin, 30 Wis. 215, State v. McCannon, 51 Mo. 160, and Ott v. Oyer, 106 Pa. 17.

*A. B. Dunsmore* and *D. W. Baldwin,* for appellee, cited, on the subject of dying declarations, Sullivan v. Com., 93 Pa. 284, Kehoe v. Com., 85 Pa. 127, Com. v. Roddy, 184 Pa. 274, Small v. Com., 91 Pa. 304, Com. v. Mika, 171 Pa. 281, Com. v. Silcox, 161 Pa. 484, Com. v. Murray, 2 Ashmead, 41, Dixon v. State, 13 Fla. 636, State v. Nash, 7 Iowa, 383, State v. Schmidt, 73 Iowa, 469, and State v. Pearce, 56 Minn. 226.

PER CURIAM, October 22, 1900:

The defendant was indicted for the murder of his wife, and was duly convicted of murder of the first degree. From the judgment pronounced upon him he appealed to this court, alleging errors in rulings on offers of evidence and in the charge. The errors alleged and complained of are included in eight assignments, six of which relate to rulings on offers of evidence, and two relate to the charge. The defendant was represented by competent counsel, who earnestly and ably discussed the questions raised by the assignments. These questions have been carefully considered by us and the conclusion we have arrived at is that no material error is discoverable in the charge or in the rulings on offers of evidence. It seems clear to us that the defendant has had an impartial trial in which all the rights and privileges consistent with the proper administration of justice have been accorded to him. We therefore dismiss all the assignments of error.

Judgment affirmed and record remitted for further proceedings according to law.