## Commonwealth *v.* Rhoads, Appellant.

*Criminal law—Voluntary manslaughter — Murder — Arrest — Misdemeanor.*

When an officer in attempting to make a lawful arrest for a misdemeanor is met with forcible resistance, he is not obliged to retreat but may use such force as may be reasonably necessary to accomplish the arrest; yet he is not justified in taking life even if the arrest cannot be otherwise effected, except when the resistance is so violent as to put the officer in danger of death or greatly bodily harm.

A deputy sheriff armed with a warrant to arrest a person charged with assault and battery is guilty of voluntary manslaughter if he shoots and kills the accused while the latter is fleeing from arrest, making no attempt at resistance, and not in any way imperiling the officer's life. In such a case it is no justification that the officer had been told that the deceased was a desperate character.

*Criminal law—Trial—Evidence—Witnesses—Discretion of the court.*

While it is the duty of the district attorney in a homicide case to present all the testimony of the material facts, whether adverse to the defendant or favorable to him, the court in its discretion may limit the witnesses to be called. Thus, where all the facts connected with the killing have been disclosed by witnesses for the commonwealth, the court may properly hold that the testimony of another witness may be reserved for the defense.

*Criminal law—Homicide—Dying declaration—Evidence.*

On the trial of a homicide case ground is sufficiently laid for introducing a sworn written statement of the deceased to the effect that he was shot by the prisoner, where it appears that when the deceased fell at the time of the shooting he exclaimed to bystanders that the prisoner had shot him, that he must die, that he would die like a man, and that thereafter, and before the paper was sworn to, he was informed by two surgeons that he could not live.

Argued May 5, 1903.    Appeal, No. 81, April T., 1903, by defendant, from judgment of O. & T. Somerset Co., Sept. T., 1902, on verdict of guilty in case of Commonwealth v. Philip Rhoads.    Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ.    Affirmed.

Indictment for murder.

The facts are stated in the opinion of the Superior Court.

Mr. Ruppel: The commonwealth having proved by the tes-

timony already in that John Ake was present at the time of the shooting of Robert Maurer, the defendant demands that the commonwealth call John Ake on the witness stand before closing, witness Ake being present in the courtroom.

Mr. Koontz: This offer is objected to for the following reason: That the commonwealth has not shown that Ake was present all the time during an attempt of the shooting; that Ake was not known to the witnesses of the commonwealth; that he was not present at the house of Herman Swank, and the witnesses only testified that they saw a man running in the field who afterwards turned out to be Ake.

The Court: We must decline to make peremptory order that the commonwealth call the witness, Ake, under the circumstances of the case. Witness Ake can, of course, be called for the defense when their side of the case is opened, and we think this case, at this stage, is not such as would compel us to deny to the district attorney and the commonwealth the right of discretion as to the proper manner of trying the cause. Exception noted to the defendant and bill sealed. [3]

Mr. Ruppel: We propose to prove by the witness on the stand that he had been informed prior to this time that Maurer was a desperate character and he would defend himself with a gun if an officer would undertake to arrest him; that he was in the habit of associating with the Ludys, getting into fights with them, and both he and they carried revolvers; and that he had been cautioned that afternoon by William Gilbert, over the telephone, that he should be very careful or he would get hurt in making the arrest. This to be followed by proof that the information he received was correct and reliable.

Mr. Koontz: This proof is objected to as irrelevant and inadmissible, for the reason the testimony of the witness on the stand has already disclosed that he followed in pursuit of Maurer who was simply charged with a misdemeanor, and began firing. That it was his own act that brought on the condition of things at that place; that his act was illegal, and therefore it is incompetent for him to give evidence of the bad character of the defendant or any persons with him, they not having molested him when he went out and called halt.

The Court: For the present the objection is sustained, the evidence excluded and a bill sealed to the defendant. [8]

The commonwealth offered a paper purporting to be the dying declaration of Robert Maurer.

Mr. Ruppel: This paper is objected to for the following reasons:

1. The commonwealth has not laid the ground by sufficient and proper proof for its admissibility.

2. There is not sufficient proof as to the belief on the mind of the deceased at the time the statement was made, as to the wound being mortal or the near approach of death.

3. The last two statements of the paper are put in the form of an interrogatory so as not to indicate clearly what the deceased intended to say in answer and whether this question had been put to the declarant before the paper was presented or whether it was the intention to answer the question in the paper.

4. The evidence does not show that at the time the paper was executed Robert Maurer understood the purpose for which the paper was to be used, or the declarations contained therein; and neither was anything said to him at that time or by him or by any other person in his presence as to the probable effect of the wound.

5. The paper contains statements that are not evidence in this form.

The Court: The court being of the opinion that sufficient proof has been offered by the commonwealth to support the offer of the paper in evidence as the dying declaration of Robert Maurer, the paper is admitted in evidence, and an exception noted to the defendant and bill sealed. [9]

Said paper reads as follows:

"Commonwealth of Pennsylvania, County of Somerset, ss.

"Personally appeared before me, a justice of the peace, in and for Somerset county, Pennsylvania, Robert Maurer, who hereby makes as he verily believes his ante mortem statement.

"That on the evening of July 19, 1902, he was at the residence of Herman Swank, in Lincoln township, Somerset county, Pennsylvania. Harry, James, and John Ludy were with me. Harry Ludy came out and told me to run Bob. Philip Rhoads was on the porch steps when I started to run, and as soon as I started to run he began to shoot at me, and after I had run

past a hay shed on the land, or near the residence of Herman Swank, one hundred and fifty steps, Philip Rhoads shot me in the back, near the hip. At no time during all this was I called to halt. When he shot me I fell, and when he came to me I said you shot me and he said you are damned right I shot you. In answer to the question: Did you shoot at Philip Rhoads? Answer—No, I did not. I had nothing to shoot with. He, Philip Rhoads, and the man with him, shot at me twelve or fifteen times.

" ROBERT MAURER.

"Sworn and subscribed before me this 20th day of July, A. D. 1902.

" J. A. RISINGER, J. P.

" And in the presence of these witnesses:

    "H. F. PILE.

    "C. M. ANKENY."

Defendant presented these points.

2. If at the time the fatal shot was fired the defendant believed his life was in danger or that he was in imminent peril of great bodily harm, and he fired the shot in self-defense, then the jury should return a verdict of not guilty. *Answer :* This is affirmed if the jury find it was necessary to fire the shot to protect his life, or himself from great bodily harm. [15]

4. Under the evidence in the case, it was the duty of the defendant to execute the warrant for the arrest of Robert Maurer, and, as an officer, he had no right to desist from or abandon his efforts simply because Maurer tried to escape. The more Maurer endeavored to escape the more imperative became the duty of Rhoads to make every effort for his capture, and he could not properly, as a private citizen might have done, give up the chase and allowed the accused to escape. *Answer :* We affirm this point, with the qualification that he should make every reasonable effort. As we have already said to you, in the execution of a warrant for a misdemeanor, an officer could not kill the person named in the warrant as an " effort for his capture." [16]

*W. H. Ruppel,* with him *A. H. Cofforth, George R. Scull* and *John R. Scott,* for appellant.—The shooting was justifiable :

State v. Barfield, 8 Iredell, 344; Hurd v. People, 25 Mich. 405; Com. v. Keller, 191 Pa. 122.

While it is not absolutely essential that the apprehension of the declarant should be shown by declarations coming from him, as it may be established by other facts and circumstances, yet the whole of the testimony, as it was given on the trial, fails to show that the deceased, at the time this statement was made, believed that his death was near at hand: Commonwealth v. Williams, 2 Ash. 69; Kilpatrick v. Commonwealth, 31 Pa. 198; Small v. Commonwealth, 91 Pa. 304; Sullivan v. Commonwealth, 93 Pa. 284; Kehoe v. Commonwealth, 85 Pa. 127.

*William H. Koontz,* with him *Rufus E. Meyers,* district attorney, and *John G. Ogle,* for appellee, cited on the question of self defense: Com. v. Lenox, 3 Brewster, 249; Com. v. Breyessee, 60 Pa. 451.

OPINION BY ORLADY, J., October 30, 1903:

The defendant, a deputy sheriff, was given a warrant issued by a justice of the peace for the arrest of Robert Maurer and Lawrence Bean who were charged with having committed an assault and battery.

Rhoads arrested Bean on July 18, and in attempting to effect the arrest of Maurer on the following day inflicted a wound from which Maurer died within twenty-four hours. Rhoads was indicted for murder and was found guilty of voluntary manslaughter. The material facts are not in dispute. It is conceded that the warrant under which Rhoads attempted to arrest Maurer charged a misdemeanor; that Maurer was never in actual custody, and was shot by Rhoads when he was fleeing from him to avoid arrest, and that Maurer died in consequence of a wound inflicted by Rhoads.

Maurer started to run when Rhoads approached him and the chase continued for about a third of a mile through fields and in the dark, during which time Rhoads fired six revolver shots in the direction of Maurer, but, as he alleged, in the air or to wound him in the legs.

Under the defendant's theory of self-defense and his own testimony he was not justified in shooting Maurer. While

Rhoads testified that the first shots came from Maurer that important fact is fully negatived by Rhoads's own testimony in regard to the search for and failure to find any firearm on Maurer or on the ground about him. In the light of the verdict, which was fully justified by the evidence, Rhoads was never in any danger from Maurer, who was running away from him. Rhoads could have stopped in safety at any time during the chase. While evading. arrest Maurer was not physically resisting the officer, or putting him in peril of life or limb. It is laid down as the law in many of our states that when the attempted arrest is for an offense less than a felony, the justification of a homicide by the person attempting the arrest is more restricted than in cases where the arrest is for a felony. When an officer in attempting to make a lawful arrest for a misdemeanor is met with forcible resistance, he is not obliged to retreat, but may use such force as may be reasonably necessary to accomplish the arrest; yet he is not justified in taking life even if the arrest cannot otherwise be effected, except when the resistance is so violent as to put the officer in danger of death or great bodily harm. In such cases his justification in killing his opponent rests solely upon the ground of self-defense (see 21, Am. & Eng. Ency. of Law, 204).

To permit the life of one charged with a misdemeanor to be taken when fleeing from arrest would, aside from its inhumanity, be productive of more abuse than good. The security of person and property is not endangered by a petty offender being at large, as in the case of a felon. Taking human life in the name of the law is the punishment inflicted· after conviction of our highest grade felony and it would ill become the majesty of the law to justify such a sacrifice to avoid a failure of justice in not arresting one charged with a misdemeanor, when, if taken and convicted, a sentence of fine or imprisonment only could be imposed.

One who flees from attempted arrest does not under all circumstances forfeit his right to live. While it is true that it is the duty of every citizen to submit to lawful arrest, there is a broad distinction between active resistance to and avoidance of a lawful warrant; between forcible opposition to arrest and merely fleeing from it. See 2 Am. & Eng. Ency.

of Law, 906, Tiner v. State, 44 Texas, 128, 1 East. P. C. 302, and 2 Bishop on Crim. Law, sec. 650.

The court did not err in refusing to direct the commonwealth to call John Ake as a witness inasmuch as he was not an actual eyewitness to the tragedy. As was said in Commonwealth v. Keller, 191 Pa. 122: " The offer should, however, be judged in the light in which it was presented to the court at the time. . . . While it is the duty of the district attorney in such a case to present all the testimony of the material facts, whether adverse to the defendant or favorable to him, the court in its discretion may limit the witnesses to be called." In the case before us, a number of witnesses had been called to prove the flight of Maurer and the shooting by Rhoads. Ake was an assistant or deputy of Rhoads, who had been specially armed to assist in making the arrest, and had fired several shots during the pursuit by Rhoads. The facts connected with the shooting had been fully disclosed by the commonwealth, and it was no abuse of discretion to hold that Ake's testimony was properly for the defense.

There was ample ground laid to entitle the commonwealth to offer in evidence the dying declaration of Maurer. A few moments after he fell to the ground and in the presence of Rhoads, he addressed his friends : " Boys, I give you good-bye —I am going to die—this man shot me and I must die, and I will die like a man." Within a few hours he was told by the two surgeons who examined his wound that " it was mortal and that he could not live ; " " could not survive from the wounds." The next morning he made an ante-mortem statement to a justice of the peace, who reduced it to writing and read it over to him. After which an oath was administered to him and he signed the statement in the presence of two witnesses. His own belief in his impending death was confirmed by the statements to him of the surgeons. His identification of Rhoads was complete, and he died a few hours later: Commonwealth v. Roddy, 184 Pa. 274 ; Commonwealth v. Winkelman, 12 Pa. Superior Ct. 497 ; Commonwealth v. Birriolo, 197 Pa. 371.

The offer to prove that the defendant had been informed before he started to make the arrest that Maurer was a desperate character and would use a gun if an officer undertook to arrest

him was properly rejected as the case was presented. Assuming all that could have been proved under the offer, it would not be any justification for killing Maurer while fleeing from arrest for a misdemeanor.

The judgment is affirmed and the record is remitted to the court below, with direction that the sentence be fully carried into effect.