JOHN HACKETT, plaintiff in error, *vs.* THE PEOPLE, defendants in error.

On the trial of an indictment for murder, evidence as to the existence of ill feeling between the prisoner's wife and the wife of the deceased, is not admissible, unless the proof shows that the prisoner had a knowledge of such ill feeling.

If there is no proof of such knowledge, the prisoner's counsel may on that account ask to have such testimony stricken out, and to have the jury instructed to disregard it. And although no such request be made, the evidence will be held to have been improperly received.

Dying declarations relating to the transaction, and circumstances attending the homicide, are admissible on a trial for murder.

So declarations that the prisoner's boys followed the deceased in the street, and clubbed him on the corner, where such act immediately preceded the meeting with the prisoner, and was the cause of his returning to his house, where the blow was struck, are admissible, as being strictly a part of the *res gestæ*—the immediate cause which led to the meeting.

But a declaration that the prisoner had often threatened to kill the declarant—such declaration being made after the latter had related the circumstances of the stabbing, and being entirely unconnected with it, without any thing to show whether the threats were made to the declarant, or to others who had told him—is inadmissible.

It would be adopting a dangerous precedent to extend the rule which admits declarations made under a conviction that the party must die, beyond the immediate transactions which led to the death. *Per* INGRAHAM, J.

THE prisoner was convicted of murder in the first degree, for stabbing John Green. Upon the trial, evidence from Mrs. Green was admitted to show indebtedness from the prisoner's wife to the wife of the deceased, and of the existence of ill feeling between them. This was objected to by the prisoner's counsel, and the objection overruled, because the district attorney expected to trace a knowledge of it to the prisoner. The dying declarations of the deceased were admitted. They contained not only an account of the transaction which ended in the death of the deceased, but also other facts, viz., that previous to the occurrence the deceased went out of his house, and the boys of the prisoner followed him and clubbed him, and in consequence thereof he returned to his house,

where he met Hackett and the stabbing took place. He also stated that Hackett had often threatened to kill him. The prisoner's counsel objected to reading the whole of the declaration, but admitted that a portion of it might be evidence. This objection was overruled, and the whole was read. The prisoner's counsel offered to show acts of violence on the part of the deceased towards the prisoner, tending to endanger his life. This was excluded, and the counsel excepted.

The court was requested to charge the jury that good character was to be considered by the jury with the view of raising a doubt as to the intent of the prisoner. This was refused, and the judge told the jury that a man of good character was less likely to commit a crime than a man of bad character. But that a sudden crime, which is supposed to come from a sudden impulse, is less influenced by character than many other crimes. That if the prisoner was the man who did the deed, he did it under a most unusual impulse.

*S. H. Stuart,* for the plaintiff in error.

*A. Oakey Hall,* (district attorney,) for the people.

INGRAHAM, J. When the evidence as to ill feeling between Mrs. Hackett and Mrs. Green was offered and admitted, there was no foundation laid for the admission of it. It was between the parties, and unless the evidence showed that the prisoner had the knowledge of it, it should not have been received. The court so considered; because both the court and district attorney spoke of its being brought home to the prisoner. If it was so received conditionally, then it was a mere discretion as to the order of proof, which is not a matter of exception. But I do not see that any proof was given to show that the prisoner had any such knowledge; and if the prisoner's coun-

sel- had on that account asked to have it stricken out, and to have the jury instructed to disregard it, the motion should have been granted. Although no such request was made, the evidence, I think, was improperly received.

The objection to the reading of the whole of the dying declaration of the deceased is a question of more difficulty. The necessary evidence to admit such declarations was amply sufficient; and the greater part of those declarations was properly received. All that related to the transaction and circumstances attending the homicide was admissible; but whether the statements of the deceased, as to previous 'difficulties and threats of the prisoner, can be received is more doubtful.

The rule in the English cases appears to be that such declarations are admitted from the necessity of the case, to prove the *res gestœ*, and the transaction from which the death results. This was so held where it was sought to prove perjury by the dying declarations of the witness who had been murdered; the court holding dying declarations only admissible where death is the subject of the charge, and *where the circumstances of the death are the subject of the declaration.* (*Rex* v. *Mead*, 2 *Barn. & Cress.* 605. 4 *D. & R.* 120.)

A similar rule has been adopted in this country, (*Nelson* v. *The State*, 7 *Humph.* 542,) in which case the court says: "It may well be doubted whether the subject matter of the declarations, viz., that the prisoner had two or three times before tried to kill him, would have been competent testimony. Declarations are admitted from the necessity of the case, to identify the prisoner and establish the circumstances of the *res gestœ* or direct transactions, from which the death results. When they relate to former and distinct transactions, they do not seem to come within the principle of necessity. It may be said that a person who is *in articulo mortis*, and therefore supposed to be in a situation in which he would say nothing but the truth,

might as well be permitted to make such declarations as to previous occurrences as in respect to the immediate cause of his death. But when we remember that this rule has been adopted rather from the necessity of the case, arising from the numerous cases where murder has been committed with no eye to see but that of the murdered man and the murderer; that the circumstances attending the murder were calculated to be more strongly impressed on the mind than others; that no opportunity for cross-examination exists; and that other testimony may be obtained as to previous transactions, we may well doubt the propriety of extending the rule so as to admit dying declarations regarding any thing, or any occurrence, except those immediately connected with the murder. As to all other occurrences, want of recollection, prejudice, passion or other causes may intervene to render the truth of such declarations less certain, and to call more forcibly for an opportunity to cross-examine, in order to ascertain the real facts of the case, and the wisdom of the rule which confines such declarations to immediate circumstances attendant upon the homicide, is apparent.

In this case, the declarations that Hackett's boys followed the deceased and clubbed him on the corner, are objected to. This immediately preceded the meeting with the prisoner, and was the cause of the return to his house, where the blow was struck. It was strictly a part of the *res gestæ*—the immediate cause which led to the meeting—and as such was not subject to objection.

The other matter objected to was the declaration that Hackett had often threatened to kill him. This was made after the deceased had related the circumstances of the stabbing, and was entirely unconnected with it. It does not appear whether the threats had been made to him or to others who had told him, and it is very clearly open to the objections before suggested. Its effect on the jury may have been very injurious. The prisoner was on trial

for his life, and the whole question whether he could be convicted of murder in the first degree was to be decided by proof of prior ill will, or prior cause for a premeditated act. If it was not premeditated, it would have been a crime of an inferior degree. I do not see, in the case, any evidence, except this, of such previous quarreling. It may be inferred from the evidence that Mrs. Hackett had communicated to him the differences existing between the members of his family and the family of the deceased, but there is no proof that such information was given; and the propriety of admitting evidence of such ill will, without proof that it had come to the knowledge of the prisoner, has already been said to be very questionable. Such a declaration, if received from the deceased, would very strongly impress on the minds of the jury that a cause of quarrel existed between the prisoner and the deceased, and in this way lay the foundation for a verdict of murder, which otherwise might have been only manslaughter.

It seems to me to be adopting a dangerous precedent to extend the rule which admits declarations made under a conviction that the party must die, beyond the immediate transactions which led to the death.

If I am right in these views, the evidence referred to should not have been received, and the judgment should be reversed, and a new trial ordered.

There is also an exception to the charge of the court upon the subject of character. The rule as given by the learned justice was correct, on this point, and the subsequent remarks as to the difference between crimes premeditated and those committed under a sudden impulse did not alter that rule, nor was there any error in those remarks.

The question which was raised on the trial, as to the cause of death, was one of fact. It was peculiarly within the province of the jury to decide it. If the death was accelerated by the wound, even if such wound, under other

circumstances, might not have been mortal, there can be no doubt but that the prisoner was chargeable with the homicide. The evidence of Dr. Southick was of itself sufficient to sustain the finding of the jury upon this point. There is no ground, on this branch of the case, to interfere with the verdict.

But I think, for the cause before stated, in regard to the dying declarations, an error was committed, and that the judgment should be reversed and a new trial ordered.

GEO. G. BARNARD, J., concurred.

SUTHERLAND, J. While I should have been quite satisfied with a verdict of manslaughter, in this case, I cannot concur in the above grounds for granting a new trial.

New trial granted.

[NEW YORK GENERAL TERM, April 2, 1866. *Geo. G. Barnard, Sutherland* and *Ingraham,* Justices.