# Court of Appeals.

June 6, 1899.

## PEOPLE v. MICHAEL McDONALD.

1. MURDER—COURT OF APPEALS.

When the court of appeals, upon a review of the whole case, is satisfied that the defendant has not had a fair trial, or that injustice may have been done, it has the power to order a reversal, even though no exception was taken at the trial to rulings alleged to be erroneous. In all cases an exception is necessary in order to raise a pure question of law, and even then, under the general provisions of the Code, the said court is required to disregard exceptions which present only technical errors and which do not affect the substantial rights of the parties.

2. SAME—ASSAULT.

Upon the trial of an indictment for homicide, the court is not required to instruct the jury as to the law constituting the different degrees of assault. Assault, in any of its degrees, is not a necessary legal element in an indictment for homicide.

APPEAL from a judgment of the supreme court rendered at a criminal trial term for the county of New York upon a verdict convicting the defendant of the crime of murder in the first degree.

William F. Howe, for appellant.

Charles E. Le Barbier, for the People.

O'BRIEN, J.—The defendant was convicted of the crime of murder in the first degree, in that on the 4th day of May, 1898, he shot and killed one Stephen Titus. Both the defendant and the deceased were employed in a butchering and packing establishment in the city of New York. The deceased was employed as timekeeper, and it was a part of his duty to keep and report the time for which the employes of the establishment were entitled to draw pay. The defendant had been employed in some other capacity, and it appeared that the deceased had deducted from his time about five hours, which diminished the compensation which he would otherwise have been entitled to receive about $1.17. It appears from the testimony of the coroner's physician, who was called as a witness by the people, that there were found upon the body of the deceased five pistol shot wounds,—two in the head, one in the neck, one in the leg, and one in the abdomen. The testimony tended to show that the last shot was the one which entered the abdomen, and that that was the only fatal wound found upon the body of the deceased. That these wounds were all inflicted by the defendant is practically undisputed, since he testified himself as a witness in his own behalf that he shot the deceased, although he failed to state the number of shots which he actually fired. The last and fatal shot was fired by the defendant after the deceased had fallen, in consequence of the previous wounds, and while he was attempting to shield himself by crawling around

and behind another person, who, it seems, was near him. At the trial the defense claimed that these wounds were inflicted in self-defense, and that the case was one of justifiable homicide. This defense rested entirely upon the defendant's own testimony, which, in substance, was that he went to the place of business where the deceased was employed for the purpose of getting the $1.17 due him for work, as he claimed ; that, after conversing with the deceased, he asked him for the money, and according to his testimony, the deceased replied by saying that the defendant was " one of those thieves that want to get pay for work that you don't do," and ordered him out of the place with a threat that he would do to him what had been done to another person named. It appears incidentally that that person had been beaten by one of the watchmen under the direction of the deceased, and seriously injured. Proof was also given on the part of the defendant as to his good character. The shooting by the defendant was established by the testimony of several witnesses called on behalf of the people. Some of these witnesses saw the defendant fire the shots, and others saw some of the shots fired and heard the report of others. There was, as already observed, no controversy with respect to the fact that the defendant inflicted the wounds which caused the death of Titus. The only controverted questions arise upon the defendant's claim that his act was justifiable, and in self-defense, and whether the killing was with deliberation and premeditation. It is quite unnecessary to discuss the evidence bearing upon these questions. It is not seriously claimed upon this appeal that the evidence was not sufficient to require its submission to the jury, and it was submitted under a very fair and impartial charge by the court. The facts and circumstances attending the shooting were testified to by several witnesses called by the prosecution, and were of such a character as to justify, if not, indeed, to require, the jury to find that the defendant willfully, and with deliberation and premeditation, shot and killed the deceased. We have examined the evidence in the record with considerable care, and find it impossible to state any reason for interfering with the verdict of the jury.

With respect to the defendant's claim that the killing was

justifiable and in self-defense, his testimony is contradicted by that of the witnesses called by the people, and by the circumstances and probabilities of the case. At all events, the weight and credibility of his version of the transaction was for the jury, and evidently they refused to credit him.

There is really but one question which the learned counsel for the defendant has presented to us for our consideration, and that is an error which he claims the trial judge committed in refusing to charge a proposition submitted to him in behalf of the defendant. The learned trial judge instructed the jury that it was open to them, according to their view of the testimony, to convict the defendant either of murder in the first degree, murder in the second degree, or manslaughter; the latter being inferior grades of the principal crime charged. He submitted to them careful instructions with respect to the facts and circumstances to be established in order to constitute these offenses. It is admitted that the charge in this respect was fair and correct, at least as far as it went. But the learned counsel for the defendant requested the court to instruct the jury as follows: "That, if the jury are not satisfied from the evidence that the prisoner is guilty of murder in either of its degrees, or manslaughter, that they may, upon the evidence, find him guilty of assault in the first degree, or assault in the second degree, and I ask your honor to charge the jury on the law as to what constitutes assault in the first and second degrees." The court replied in this language: "That I refuse under this indictment." There was no exception taken to the ruling of the court upon these requests, but it is urged that in a capital case this court has power to reverse the judgment of conviction where an error has been committed, although no exception was taken to the ruling at the trial. That is undoubtedly true, but only in cases where the court is of opinion that justice requires that a new trial should be had. When this court, upon a review of the whole case, is satisfied that the defendant has not had a fair trial, or that injustice may have been done, it has the power to order a reversal, even though no exception was taken at the trial to rulings alleged to be erroneous. In all cases an exception is necessary in order to raise a pure question of law, and

even then, under the general provisions of the Code, we are re-
quired to disregard exceptions which present only technical
errors, and which do not affect the substantial rights of the par-
ties.    If it be conceded that the refusal of the learned trial judge
to charge the proposition above stated was error, it would be
difficult even then to give any good reason for making it a
ground for interfering with the verdict of the jury.    It was left
to the jury to say whether the offense was murder in the first
degree, murder in the second degree, or manslaughter, and it
was open to them under the charge to find a verdict for the
lowest offense.    But it seems that the jury refused to find, from
all the evidence, that it was any other than a case of willful
killing, with deliberation and premeditation.    Under these cir-
cumstances it would be very difficult to show that the defend-
ant was in any wise prejudiced by the refusal of the court to
charge the proposition submitted by his counsel.

But we are also of the opinion that the defendant was not en-
titled to the charge requested.    It is provided by section 444 of
the Code of Criminal Procedure that " upon an indictment for
a crime consisting of different degrees, the jury may find the
defendant not guilty of the degree charged in the indictment,
and guilty of any degree inferior thereto, or of an attempt to
commit the crime."    A simple assault is not one of the grades
of homicide, and hence this section had no application to the
case.    But the next section provides that " in all other cases the
defendant may be found guilty of any crime, the commission
of which is necessarily included in that with which he is charged
in the indictment."    This section has no application to the case
at bar, unless it can be shown that a common assault is neces-
sarily included in a charge of murder.    The learned counsel for
the defendant insists that under the indictment in this case the
defendant could have been convicted of an assault in the second
degree.    It he is correct in that proposition, it would follow
that, had the defendant been convicted of that very inferior of-
fense, it would have been a bar to any indictment charging
either degree of murder or manslaughter.    We think it would
not and it has been so held upon every good authority.    Burns
v. People, 1 Parker, Cr. R. 182 ; Colby, Cr. Law, 388 ; Whart.

Cr. Law (5th Ed..) § 1122; Dedieu v. People, 22 N. Y. 178; People v. Willson, 109 N. Y. 345, 16 N. E. 540. An assault in any of its degrees, we think, is not a necessary legal element in a charge of murder in an indictment in substantially the same form as was in use under the common law, and, until some statute authorizes a conviction for this offense under an indictmetnt charging homicide, the courts are not required to snbmit such a question to the jury. We can find no error in the record that would justify us in interfering with the judgment, and it must therefore be affirmed.

All concur.

Judgment affirmed.