(96 App. Div. 479.)

PEOPLE v. SCHIAVI.

(Supreme Court, Appellate Division, Fourth Department.  July 6, 1904.)

1. HOMICIDE—VERDICT OF ASSAULT—STATUTE.
    In a prosecution for homicide, in which the indictment charged defendant and another with having fatally cut decedent in the abdomen, a finding of the jury that defendant was guilty of assault in the first degree, though sustained by the evidence, is not permissible under Code Cr. Proc. § 444, providing that on a trial for murder or manslaughter, "if the act complained of" is not proven to be the cause of death, the defendant may be convicted of assault in any degree "constituted by the act" and warranted by the evidence, where the proof showed that the stab in the abdomen was the cause of death.

2. SAME—DYING DECLARATIONS—ADMISSIBILITY.
    Where, in a prosecution for homicide, defendant and his brother were charged with having fatally cut decedent in the abdomen, the dying declarations of decedent to the effect that defendant and defendant's brother assaulted him, both stabbing him, and that he made no attempt to cut any one, and only endeavored to defend himself, were only admissible on the principle that the death of deceased was the subject of the dying declarations, and hence were not admissible for the purpose of proving the crime of assault.

3. SAME—REVERSAL ON APPEAL—EFFECT.
    Where the verdict in a prosecution for homicide is for assault in the first degree, but is not justifiable under the law, a reversal, on appeal, of a judgment of conviction, does not necessitate a discharge of defendant.

4. SAME—NEW TRIAL—STATUTES.
    Under Code Cr. Proc. § 515, providing that the remedy for review of a judgment in a criminal case is by appeal, and Id. § 543, granting authority to appellate courts to order a new trial in a criminal case, if they so elect, the fact that in a prosecution for homicide a motion was made for the discharge of defendant on the ground that a verdict of assault in the first degree was unjustifiable, instead of a motion for a new trial, does not

prevent the court on appeal from ordering a new trial, where the verdict was contrary to law.

Stover, J., dissenting.

Appeal from Trial Term, Steuben County.

Vingenzo Schiavi was prosecuted for homicide and convicted of assault in the first degree. From the judgment and an order denying a motion to discharge him on the ground that the verdict was unjustifiable, defendant appeals. Reversed, and new trial ordered.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

James O. Sebring, for appellant.

Almon W. Burrell, Dist. Atty., for the People.

SPRING, J. The defendant and his brother, Pasqualo Schiavi, were jointly indicted for manslaughter in the first degree, charged with killing Antonio Perfetti on the 18th day of July, 1903. The indictment charged that the defendants named, "then and there being, willfully and feloniously did make an assault, and him, the said Antonio Perfetti, with a certain knife which they, the said Vingenzo Schiavi and Pasqualo Schiavi, in their right hands each then and there had and held, in and upon the abdomen of him, the said Antonio Perfetti, then and there willfully and feloniously did strike, cut, stab, and wound, giving unto him, the said Antonio Perfetti, then and there with knife aforesaid, in and upon the abdomen of him, the said Antonio Perfetti, one mortal wound," and which wound caused his death. Upon the demand of the accused separate trials were ordered, and the district attorney elected to try the appellant first.

The Schiavis and Antonio Perfetti and his brother, Antolena, belonged to a gang of laborers employed by the New York Central Railroad Company, and were stationed at Presho, in the town of Lindley, in said county of Steuben. They had lived in box freight cars at that place since March preceding the alleged assault. The Perfettis, with others, occupied one car, while the Schiavis were in another. On the 18th day of July the men were not at work, and spent the day in drinking beer, playing cards, and loafing about, and at the time of the catastrophe were sufficiently intoxicated to be quarrelsome. About 5 o'clock in the afternoon Antonio Perfetti went into his car, and was followed by the defendant, who carried a revolver in his hand. They had been indulging in a wordy altercation outside the car before going inside, and according to the people's witnesses the defendant, as he went into the car, said to Antonio Perfetti, "We have always been friends; now we want to be enemies." Antonio ordered him to leave the car, which he did not do, and a tussle followed. The defendant's brother, Pasqualo, joined in the affray, assisting his brother; and Antolena also participated in behalf of Antonio. All of the participants were more or less cut with knives, but Antonio received a deep gash in the abdomen, from which wound he died four days later. The witnesses on behalf of the people were unable to identify the person who did the fatal stabbing. The most of them testified that the defendant had a revolver, but no knife, and that Pasqualo had a knife.

Antolena Perfetti, however, testified that each of the Schiavis had a knife, and Antonio, in a dying statement, made by him shortly prior to his death, corroborated his brother in that particular.

The defendant and his brother Pasqualo were sworn, and testified that Antolena Perfetti struck with his knife at the defendant, who jumped aside, and the knife penetrated the abdomen of Antonio, and that was the wound which caused his death; and it appears that there was only one incision in that part of the body. The evidence of the defendant and his brother furnished the only direct proof of the mortal wound inflicted upon Antonio.

The defendant was tried for the crime of manslaughter in the first degree, as charged in the indictment, and the trial court, in his main charge to the jury, confined himself to the charge of manslaughter, defining both degrees of that crime. The jury retired about 7 o'clock in the evening and returned at midnight, and in response to an inquiry of the court if they had agreed the foreman said, "The minority have declared they would stand until hell froze over." At 9:30 the following morning the jury reported to the court, who instructed them as follows:

"Gentlemen of the jury, I received your communication, in which you inquire if you could render a verdict for a lesser degree, and would say, if you are unable to agree upon a verdict on the charge named, you have the right, if, in your opinion, the evidence warrants it, to render a verdict for a lesser degree. The defendant is indicted for manslaughter in the first degree. There is a second degree of manslaughter, the extent of the punishment of which is less; and if, in your judgment, the evidence warrants it, you can bring in a verdict for the lesser degree, or for any degree of assault constituted by said act, if warranted by the evidence, if you shall find that the act complained of was not the cause of death. You may retire for further deliberation."

Upon the request of the defendant's counsel the court thereupon defined the degrees of manslaughter and of assault, and the jury shortly returned with the verdict of "guilty of assault in the first degree." Upon a succeeding day, to which the action was adjourned, the counsel for the defendant moved that the defendant be discharged upon specific grounds, among which were that the verdict acquitted the defendant of the crime charged in the indictment, and that the evidence did not warrant the verdict, and that the same was illegal and void.

Until quite recently, upon an indictment charging the defendant with homicide of any grade, the jury might not convict him of an assault. People v. McDonald, 159 N. Y. 309–314, 54 N. E. 46. The Legislature thereafter amended section 444 of the Code of Criminal Procedure by inserting the following clause:

"Upon a trial for murder or manslaughter, if the act complained of is not proven to be the cause of death, the defendant may be convicted of assault in any degree constituted by said act, and warranted by the evidence."

The jury, under the evidence, might have found the defendant guilty as charged in the indictment, either upon the inference deducible that he committed the fatal wound, or that the act was perpetrated by Pasqualo while the two were jointly engaged in a murderous assault upon Antonio, and still the defendant be convicted as principal. Section 29, Pen. Code. For the purpose of getting at the true meaning of the amendment to section 444 of the Code of Criminal Procedure, we will

put that aspect upon the verdict of the jury most favorable to the contention of the district attorney. We may say the jury discredited the version given by the Perfettis and the witnesses on behalf of the people, and believed the story of the defendant and his brother that the deadly stab was inflicted by Antolena Perfetti. The jury, however, did not wish to relieve the defendant of all guilty participation in the affray; so, mindful of the charge of the court, convicted him of assault with intent to kill Antonio. The evidence may be said to warrant this finding. The defendant had a revolver in his hand; that with his finger on the trigger he pointed at Antonio; he had a knife, which he used on Antonio, as there were several knife cuts made by the defendant or Pasqualo. The jury therefore may have been justified in concluding that the defendant assaulted Antonio with intent to take his life. We are therefore to consider if the verdict, though sustained by the evidence, was permissible by reason of the interpolated clause in section 444 of the Code of Criminal Procedure. "The act complained of" was that Antonio was fatally cut in the abdomen by the defendant and Pasqualo Schiavi, or, as the case is presented, in effect the charge is that the defendant perpetrated homicide. The verdict of the jury exonerates him of the crime charged. The logic of the verdict is that Antolena was guilty of the act with which the Schiavis are accused in the indictment. The jury have not found that Antonio did not die of the wound in his abdomen. The evidence shows without controversy that he suffered one knife wound in the abdomen, and that resulted in his death. At the threshold of the inquiry, therefore, we are met with the failure to find the essential fact which allows a verdict for assault where the defendant is upon trial for a homicide. "If the act complained of is not proven to be the cause of death," the very essence of the permissive amendment is lacking. Here "the act complained of" is unmistakably proven to be the cause of death. The accusation in the indictment is a definite concrete statement that the wound in the abdomen was inflicted by the defendant, and that death resulted therefrom. The proof, in the light of the verdict of the jury, is that the death did result from that wound, but it was not inflicted by the defendant. But the learned district attorney with considerable plausibility urges that "the act complained of" embraces the statement that the defendant committed it, and the jury have found otherwise. Concede his premise, and we are not aided in arriving at his conclusion. The defendant is still charged with one offense—the killing of Antonio by a stab in the abdomen. The accusation is, not that the defendant cut him in the back, or in the arm, or did any other act, except to strike him with a knife in the abdomen, causing death. The jury have apparently exculpated him of the offense of which he was accused, and found he committed another assault. They have not held that the cut in the abdomen was not mortal; only that the defendant was not responsible for it. The position taken by the counsel excludes the act which was done (the infliction of the mortal wound), and makes the person charged, the instrumentality alleged to have committed it, of paramount importance; and if he did not do the act, although it was in fact done, "as complained of," then the jury may find for the lesser offense. The peculiar language "the act complained of" comprises

the deed, which must have been proven not to have caused death before the verdict of assault may be justified; that is, we cannot disregard the physical act itself charged in the indictment, and which the proof shows caused the death of Antonio.

An analysis of the residue of the added clause in the section which permits the defendant to "be convicted of assault in any degree constituted by said act and warranted by the evidence" confirms our position. "Constituted by the act" means that the assault must form a component part of the act, of the stabbing in the abdomen, of the wound indisputably fatal, which the jury held was not committed at all by the defendant. It is insisted that this construction renders the amendment wholly ineffective and meaningless. If the evidence warranted the conclusion that Antonio did not die of the wound in the abdomen, but from some other cause, then the indispensable preliminary would be met. It may be, perhaps, when a man is on trial for murder or manslaughter, that the evidence may show that death did not result from the act charged, but from some other cause; still the defendant did commit the act of which he is accused, and the jury, by virtue of the amendment in question, may convict of an assault. This interpretation does no violence to the language employed, is consistent with good sense, and the conviction would be based upon the very act set out in the indictment.

There is another suggestion of more or less cogency. The dying declaration of Antonio Perfetti was received in evidence. This statement was only admissible upon the principle that "the death of the deceased is the subject of the charge, and the circumstances of the death are the subject of the dying declarations." Rex v. Mead, 2 B. & C. 605, quoted approvingly in Greenleaf on Evidence, vol. 1, § 156; Waldele v. N. Y. C. & H. R. R. R. Co., 95 N. Y. 274–287, et seq., 47 Am. Rep. 41; Wilson v. Boerem, 15 Johns. 286; People v. Davis, 56 N. Y. 95–103. The jury disregarded the story of the declarant as to who inflicted the fatal wound, but the statement contained material facts aside from this. He said that the defendant and Pasqualo assaulted him, both stabbing him, and that he made "no attempt to cut any one," and only endeavored to defend himself. These statements were very potential on the charge of assault, and were not admissible for the purpose of proving that crime.

The counsel for the appellant claims that the jury acquitted the defendant of the crime for which he was indicted, and, if the verdict is unjustifiable, he must be discharged. We do not assent to this proposition, and our reasons are set forth in People v. Wheeler, 79 App. Div. 396–398, et seq., 79 N. Y. Supp. 454, and in the authorities there cited, and a further rehearsal of them would not be profitable at this time.

The fact that a motion was made for a discharge of the defendant, instead of for a new trial, does not aid him on this appeal. The review of a judgment of conviction is by appeal (Code Cr. Proc. § 515), and the Appellate Court possesses ample authority to order a new trial if it so elects (Id. § 543). The defendant is voluntarily in this court by the only procedure allowed, and the provisions of the Code of Criminal Procedure cited in the opinion referred to are abundant to authorize the granting of a new trial. A mistrial has been had, an

error has been committed, a verdict has been received contrary to law, and the action is in the same situation as if no trial at all had been had. The judgment of conviction should be reversed, and a new trial ordered in the Steuben County Court.

Judgment of conviction reversed, and a new trial ordered in the Steuben County Court. All concur, except STOVER, J., who dissents in an opinion.

STOVER, J. (dissenting). It seems to me that the position taken in the prevailing opinion in this case is based upon a too limited interpretation of the statute. The narrowing of the act done to the final culmination, it seems to me, is not the interpretation that should be given to the statute. The act complained of is the assault which was made upon the deceased, and during which the acts of violence were committed. It may be quite true that the jury were unable to determine that the defendant, whose trial is now being reviewed, did actually commit the stabbing; but they have been found by the verdict that he did take part in the assault, and was present; and as the jury, with ample evidence before them to justify a finding of murder or assault, have, in their leniency, and under the rule which gives the prisoner the benefit of a doubt found him guilty of the lesser crime, we ought not to so restrict our construction as to say that it was contemplated that the statute would not permit a conviction of assault which resulted in death simply because one of the acts committed during the combined assault of the two defendants could not be traced to the hand of the defendant whose trial is being reviewed. The jury would have been justified, under the evidence, in finding him guilty of a greater crime, and he ought not now to escape the punishment of a crime which the evidence clearly warrants, because a jury, in the discharge of their duty, have seen fit to give him the benefit of a doubt under the law. I think he was properly convicted of the assault and that the fair intendment of the statute is that, where an assault is charged or complained of, and the evidence established the assault, although death may not be traced directly to the hand of the defendant, he may be convicted of the assault; that the act complained of, under the circumstances, is the assault; and that where an assault is charged it is not necessary that every detail of the assault charged be set forth. The act complained of is the assault.