SUPREME COURT—APP. DIVISION—FIRST DEPARTMENT,

July 15, 1907.

## THE PEOPLE v. LENA BRECHT.

'(120 App. Div. 969.)

(1). ABORTION—EVIDENCE—DYING DECLARATIONS.

Dying declarations are only admissible against the defendant in a criminal action when the person making them was under the belief of impending death and had abandoned hope of recovery. Before such declarations become admissible both conditions of mind must be established.

(2). SAME.

An abandonment of hope of recovery by the victim of a criminal abortion is not established when, not being apprised of her dangerous condition or that she was about to be operated upon, she stated in answer to a question by the coroner that although she believed she was about to die, she hoped that God would let her recover, and her dying declarations are not admissible.

(3). SAME—CODE CIV. PROC. § 834.

The privilege of physicians under § 834 of the Code of Civil Procedure does not apply to criminal prosecutions for causing death of the patient, and a physician may state what he learned as to the physical condition of the patient by examination.

(4). SAME—LAWS 1905 CH. 331.

Chapter 331 of the Laws of 1905, amending said § by providing that the privilege shall not apply where the patient is a child under sixteen years of age and the information acquired indicates that the patient is a victim of a crime, must be construed to apply only to a living patient under sixteen years of age upon whom a crime is committed, and has no application to a person whose *death* is the subject of a criminal prosecution.

APPEAL by the defendant, Lena Brecht, from a judgment of the Court of General Sessions of the Peace in and for the county of New York, rendered on the 16th day of January, 1906, convicting the defendant of the crime of manslaughter in the first degree.

*Edward Hymes,* for the appellant.

*Robert S. Johnstone,* for the respondent.

HOUGHTON, J.:.

The defendant was indicted and convicted of the crime of manslaughter in the first degree in having caused the death of one Pauline Schaefer through performing a criminal operation upon her. There is no direct evidence that the defendant performed or aided in the criminal operation. For that fact the People were compelled to rely upon the alleged dying declarations of the victim.

The extrinsic facts proved by unchallenged evidence were that two doctors were summoned to defendant's house to treat a woman whom they found suffering from a punctured womb and whom they directed to be taken to a hospital for operation and that defendant paid their fee for the visit, and that in the street window of the defendant's apartment was a sign reading " Mrs. Brecht." In addition it was shown that when the officer came to arrest the defendant he asked her where the girl Pauline Mathias was and defendant said she knew nothing about her. There had been a mistake at police headquarters in the name and it had been recorded as " Mathias " instead of Schaefer or Traulsen, by which she was also known, and defendant's denial is of slight probative force in view of such fact, as is also her statement to the coroner that she knew of no woman who desired to make a dying declaration.

That the deceased was pregnant and that a criminal operation had been performed upon her and that she died from its resulting effect, were not controverted by any affirmative evidence on the part of defendant, and we assume in our consideration of the case that such were the facts.

The appellant insists that the facts proven were insufficient to permit the declarations of the deceased to be introduced in evidence as dying declarations to show defendant's participation in the criminal abortion. We think such contention correct and

that the declarations were improperly admitted. The statements of the deceased concerning her belief as to her immediate death and abandonment of hope of recovering were elicited by the coroner by categorical questions put to her. The questions and answers are as follows: " Q. Do you now believe that you are about to die? A. Yes. Q. Have you any hope of recovery from the effect of the injury which you have received? A. I hope God will let me recover."

These answers to these questions, with the accompanying declaration that the defendant had assisted in performing the criminal operation upon the decedent, were obtained from the decedent at about ten A. M. on May fourteenth, and the operation at the hospital performed in the hope of saving her life took place about three o'clock P. M of that day, and she died about three hours thereafter. Soon after her removal to the hospital on the evening before, the coroner had endeavored to obtain the declarations, but found her in a too weak physical condition. He testifies that when he took her statement he believed her to be in a dying condition, but did not tell her so; nor is there any proof that any physician or other person apprised her of the dangerous condition she was in and the likelihood of her soon dying. Before she was removed to the hospital and while the doctors were examining her at the defendant's home, she walked with support from the bed to a table for better examination, and rode in a carriage to the hospital, with whom does not appear.. The case is barren of any facts tending to show that the deceased knew she was dangerously ill, except from the fact that she was bleeding from her genital organs and that physicians were called and she was hurried to a hospital. Even the fact that she knew an operation was to be performed upon her in the afternoon does not appear.

In the light of this lack of knowledge and understanding on her part the answers to the questions propounded to her by the coroner do not have the force they otherwise would. The trial

court admitted the declarations after some hesitation, finally interpreting the expression of hope that God would let her recover in the nature of a wish or prayer that she might be permitted to do so, but with no hope that such wish would be granted.

There is no dispute between counsel as to the rule respecting the admission of dying declarations, and both concede that in order to make them competent as evidence it must appear that the person making them does so under a belief of impending death and when entertaining no hope of recovery, and such is the law. (*People* v. *Smith,* 104 N. Y. 491.) Before such declarations can be admitted in evidence both conditions of mind must be established. Belief in impending death alone is insufficient. Abandonment of hope of recovery must also be shown. (*People* v. *Chase,* 79 Hun, 296; affd., 143 N. Y. 669.)

Assuming the decedent's answer to the first question shows, notwithstanding her lack of information as to her precarious condition, that she believed she was about to die, her answer to the second question comes far short of showing that she was without hope of recovery. Taken literally, it shows that she did entertain a hope of recovery. If she had been informed by some physician in whom she believed that she must die and that her condition was hopeless, probably her answer might be taken in the nature of a prayer to be spared from what she knew and believed to be inevitable. In the light of the facts appearing, however, we do not think such an interpretation is permissible. Dying declarations are admitted from necessity for lack of better proof. Their reception as evidence is an exception to the general rule, and the facts showing their competency should not be ambiguous or uncertain. (*People* v. *Kraft,* 148 N. Y. 631.)

In the cases of *Brotherton* v. *People.* (75 N. Y. 159) and of *People* v. *Conklin* (175 id. 333, 17 N. Y. Crim. 414) and of

*People* v. *Chase* (*supra*), and of *People* v. *Burt* (51 App. Div. 106; affd., 170 N. Y. 561), upon which respondent relies, there were elements lacking in the present case, which showed that the decedents had been told they must die, and had so believed and had abandoned hope of recovery, or made use of such involuntary expressions as showed their belief in both. In the *Brotherton* case the decedent repeatedly stated that he would not recover, and his physician had told him he must die. The decedent in the *Conklin* case was practically dying when the declarations were made, and the fact that she so stated and asked that a priest be sent for to administer the last rites to her, in view of her religious belief, were deemed sufficient to show belief in impending death and abandonment of hope, and could not well be interpreted otherwise. In the *Chase* case the statement was " I believe I am going to die; I would like to live to show you what a good girl I could be, but I won't have the chance," or " I know I can't live." And in the *Burt* case the decedent was informed he must die of his wounds and declared he knew it to be so.

The above cases illustrate that no set of words or phrases is necessary to establish a belief of impending death and abandonment of hope of recovery, and that each case must depend upon its own peculiar facts. Whatever the facts proven are, however, they must fairly show that both conditions of mind existed before the dying declarations can be admitted in evidence. *People* v. *Evans* (40 Hun, 492) is more nearly like the present than any authority called to our attention. In that case the decedent said he believed he was about to die, and to the inquiry as to whether he had any hope of recovery he replied, " It is hard for me to say." It was held that the element of abandonment of hope of recovery was lacking and that the declarations were improperly received. We are of opinion that such was the situation in the present case. The error was not cured by leaving to the jury the question as to what the dece-

dent meant by her expression that she hoped God would let her recover. It was for the court to determine whether proper foundation had been laid for reception of the declarations, and not for the jury.

The defendant also urges that it was error to permit Dr. Roth to testify to what he learned as to the physical condition and ailment of the decedent on his examination of her when he ordered her removal to the hospital, because it was a disclosure by him of what he learned while attending a patient in his professional capacity. It is generally understood by the courts that the prohibition of section 834 of the Code of Civil Procedure does not apply to a criminal prosecution for causing the death of the patient, and such is the purport of the decisions in *Pierson* v. *People* (79 N. Y. 424) and *People* v. *Harris* (136 id. 423, 448). The only doubt that such is the law is raised by the fact that the Legislature, by chapter 331 of the Laws of 1905, amended that section by providing that it should not apply where the patient was a child under the age of sixteen years and the information acquired by the physician indicated that such patient had been the victim of a crime. It is argued that the enactment of this exception indicates that the Legislature understood that in all other cases no disclosure was permissible. In *People* v. *Murphy* (101 N. Y. 126) it was held that the prohibition of the section did apply to a criminal prosecution for producing an abortion where the patient was living. All of the above decisions respecting the application of the section had been made when the Legislature enacted the amendment of 1905; and it can be given full force by interpreting it to apply to a living patient under sixteen years of age upon whom a crime had been committed. Under the decisions of the court the section did not apply to a dead patient, whose death was the subject of a criminal prosecution, but it did apply to any living patient upon whom a crime was charged to have been committed. By the amendment it does not apply to

a patient under sixteen years of age upon whom a crime is committed, whether dead or alive. Our conclusion is that the prohibition of the section does not apply to a criminal prosecution for the death of the patient, and that it was proper to permit the physician to testify to the facts which he learned on his examination of the decedent.

Other errors are alleged to have been committed upon the trial, but it is unnecessary to·discuss them in view of the fact that we conclude a new trial must be had because of the error in admitting the alleged dying declarations.

The judgment of conviction must be reversed and a new trial granted.

PATTERSON, P. J., McLAUGHLIN, LAUGHLIN and LAMBERT, JJ., concurred.

Judgment reversed and new trial granted.

NOTE:—ADMISSIBILITY OF DYING DECLARATIONS IN CRIMINAL PROSECUTIONS.

The large number of authorities on this question makes it necessary to limit the note to cases arising in New York, with references to cases from other jurisdictions to show general rules not established in this state.

GENERAL DOCTRINE.

Dying declarations are admitted in evidence on the ground of necessity in order to prevent the escape of the slayer from justice, and on the theory that when a person is in constant expectation of death, all temptation to falsehood is absent and the serious nature of the situation is presumed to impress such person with the necessity of telling the truth. People v. Wood, 2 Edm. Sel. Cas. 71; Hackett v. People, 54 Barb. 370; People v. Lonsdale, 122 Mich. 388; Brown v. Com., 73 Pa. 321; Reg. v. Osman, 15 Cox, C. C. 1; People v. Davis, 56 N. Y. 95.

Dying declarations should, however, be received with great caution for the reason that their truthfulness cannot be tested by cross-examination and the jury have no opportunity of watching the witness; and, besides, such testimony is generally given by relatives and friends

of the deceased. Ward v. State, 78 Ala. 441; Shell v. State, 88 Ala. 14; Railing v. Com., 110 Pa. 100; Com. v. Roddy, 184 Pa. 274; State v. Wilson, 24 Kan. 189.

The statements should have been made under a sense of impending dissolution, which occurred soon thereafter. People v. Smith, 172 N. Y. 210; Queen v. Pym, 1 Cox, C. C. 339; People v. Sweeney, 41 Hun, 332; People v. Anderson, 2 Wheeler, C. C. 390; People v. Chase, 79 Hun, 296; People v. Robinson, 2 Parker Crim. Rep. 235; People v. Perry, 8 Abb. Pr. N. S. 27; People v. Brecht, 21 N. Y. Crim. Rep. 391; Com. v. Bishop, 165 Mass.        ; Peak v. State, 50 N. J. L. 179; Mattox v. U. S., 146 U. S. 140; Westbrook v. People, 126 Ill. 81; Com. v. Birriolo, 197 Pa. 371.

And it is not sufficient to show that declarant died soon after making the statements or that he was mortally wounded. Justice v. State, 99 Ala. 180; Green v. Com., 13 Ky. L. Rep. 897.

But in People v. Anderson, 2 Wheeler, C. C. 390, it was said that, perhaps, the dying declarations of a murdered person might be received though there was a faint, lingering hope of recovery.

**TIME ELAPSING BETWEEN STATEMENTS AND DEATH.**
The time elapsing between the declarations and the death of the declarant cannot be regarded as an important element, since all that is material is that, when the statements were made, the declarant believed that he was about to die; that they were uttered under a sense of impending dissolution. People v. Chase, 79 Hun, 296; People v. Conklin, 175 N. Y. 333; State v. Center, 35 Vt. 378; Com. v. Cooper, 5 Allen 495; Rex v. Mosley, 1 Moody, C. C. 97.

So, the lapse of several hours do not render them inadmissible: State v. Reed, 53 Kan. 767; or the lapse of several days: Com. v. Haney, 127 Mass. 455; People v. Weaver, 108 Mich. 649; Rex v. Bonner, 6 Car. & P. 386; or the lapse of several weeks: Com. v. Cooper, 5 Allen 495; State v. Wee, 7 Idaho 188. In the case of lapse of months, see State v. Craine, 120 N. C. 601; State v. Wilson, 121 Mo. 434.

**NATURE OF DECLARATIONS.**
Such declarations, to be competent, must relate to the actual facts which cause death. People v. Davis, 56 N. Y. 95.

Thus, the expression " I pray God to forgive him " is not admissible. Sullivan v. State, 102 Ala. 135. See also, Lipscomb v. State, 75 Miss. 559.

But when dying declarations identify the accused, they are competent. Com. v. Roddy, 184 Pa. 274; State v. Roberts, 28 Nev. 350.

Statements made by deceased as to an occurrence which transpired several hours before the homicide and which was an independent transaction not shown to have any connection with the crime, are not competent as dying declarations. People v. Smith, 172 N. Y. 210; Hackett v. People, 54 Barb. 370.

Matters of opinion uttered by a dying person are not admissible as dying declarations. State v. Baldwin, 79 Iowa 714; State v. Elkins, 101 Mo. 344; State v. Arnold, 35 N. C. 184.

Thus, a statement that "he murdered me without cause," is incompetent. Bateson v. State, 46 Tex. Crim. Rep. 34.

And in Shaw v. People, 3 Hun, 275, the court held that declarations by a wife in extremis, to the effect that her husband and another person were the cause of her suffering, and that she expected that they would cause her death, are not statements of fact and so are inadmissible.

Dying declarations are not admissible for the purpose of proving a mere assault. People v. Schiavi, 96 App. Div. 479. Nor admissible in the prosecution of one charged with pursuading the deceased to submit to the use of an instrument upon her person and to take drugs to produce a miscarriage, in consequence of which she died. People v. Davis, 56 N. Y. 95. But a dying declaration that a certain physician operated upon declarant is competent. Maine v. People, 9 Hun, 113.

And such declarations were not considered in People v. Corey, 157 N. Y. 332, to be rendered incompetent by par. 3, sect. 8, of the Code of Criminal Procedure, which provides that the defendant in a criminal action is entitled "to be confronted with the witnesses against him in the presence of the court." This is, probably, the first case in the state to pass on this question. See, also, Com. v. Richards, 18 Pick. 434; State v. Dickinson, 41 Wis. 299; State v. Jeswell, 22 R. I. 136.

**DECLARATIONS IN FAVOR OF ACCUSED.**

Such declarations may be given in evidence on the trial of one charged with homicide, when they are in favor of the accused, as well as when they are against him. People v. Knapp, 26 Mich. 112; Mattox v. U. S., 146 U. S. 140; Rex v. Scaife, 1 Moody & R. 551.