## STATE *vs.* WALTER L. JOHNSON.

### MAY 28, 1918.

PRESENT: Parkhurst, C. J., Sweetland, Vincent, and Baker, JJ.

*(1) Indictments. Dying Declarations. Res Gestæ.*

Evidence of dying declarations should be restricted to the act and the circumstances immediately attending it and forming a part of the *res gestæ*, and they are not admissible to prove former or extrinsic transactions.

In an indictment charging defendant with counseling and aiding an abortion, submission to the jury of a dying declaration containing the statement that defendant was the man responsible for the condition of deceased, was error, since such statement did not refer to matters constituting a part of the *res gestæ.*

*(2) Indictments. Dying Declarations.*

Two cases, one charging defendant with counseling and aiding an abortion and the other charging defendant with carnal knowledge of a girl under the age of consent, were tried together at request of defendant. A dying declaration in part inadmissible in the first case and wholly inadmissible in the second case was admitted, the court charging the jury that they must not consider the declaration in connection with the indictment charging carnal knowledge. A portion of the declaration referred to the offence charged in the second indictment.

*Held,* that the influence which a knowledge of the matters contained in the declaration would be likely to produce upon the minds of the jury, entitled the defendant to a new trial in the indictment charging carnal knowledge.

INDICTMENTS. Heard on exceptions of defendant and sustained.

VINCENT, J. Walter L. Johnson is the defendant under two indictments. One numbered 9001 charges him with aiding, assisting and counseling an abortion upon the body of Dorothy V. Hughes which resulted in her death. The other indictment, numbered 9002, charges the defendant with having carnal knowledge of one Dorothy V. Hughes, a girl under the age of sixteen years and therefore under the age of consent.

To each of these indictments the defendant pleaded not guilty. The cases were tried together in the Superior Court, at the request of the defendant, and in each the jury ren-

dered a verdict of guilty. In each case the defendant filed a
motion for a new trial. Before these motions came up for
hearing, the judge who presided at the trial was elevated
to the bench of the Supreme Court. These motions were
accordingly heard by another judge, not sitting at the trial,
and were denied.

We will first take up the indictment numbered 9001
charging the defendant with aiding, assisting and counseling
an abortion in which the defendant has brought to this court
his bill of exceptions setting forth eighteen assignments of
error. Of these we will first take up the sixth and seventh
exceptions alleging error of the trial court in admitting the
dying declaration of Dorothy V. Hughes. This declaration
is as follows:

"My name is Dorothy Vivian Imelda Hughes, my home
is 297 Fountain Street, Providence, R. I. I realize that I am
very sick and that I cannot get better and that I am about
to die. I wish to tell how everything happened. I found
that I was in a family way; was when Walter Johnson took
me to the doctor. Walter Johnston took me to Dr. Robbins
office at Thornton, a week ago today, that was on Monday.
We met Dr. Robbins at his office that morning at about
noontime. The doctor made an examination, he told me
that I was in a family way, and had been that way for two
months and three weeks. He told me that he could not do
anything that day, but he told me to come back on Tuesday.
Tuesday morning Walter Johnston went with me to Dr.
Robbins office. Dr. Robbins took a piece of metal about a
foot long, with a loop on the end of it, it was covered with a
rubber tube, after he put it in there, he pulled out the metal
and left the rubber in there. Walter Johnson paid him
twenty-five dollars. We went home and that afternoon,
Tuesday, I started in flowing, something big covered with
blood came out. Dr. Robbins came to my house on Foun-
tain Street, on Wednesday, Thursday and Friday, to see me,
two and sometimes three times a day. Friday afternoon I
called in Dr. Slack in, he did not know what happened, he

treated me for inflammation of the bowels, he gave me some pills and he sent me to the hospital, the Rhode Island Hospital where I am now.  Walter Johnston, 69 Stewart Street is the man who is responsible for my condition, he is the only man I have been with.  I have never had anything to do with any other man.

(Sgd)   Dorothy Vivian Imelda Hughes." .

The defendant objected to the introduction of this declaration as a whole, which objection being overruled he asked that the concluding statement, "Walter Johnston, 69 Stewart Street is the man who is responsible for my condition, he is the only man I have been with.  I have never had anything to do with any other man.", should be eliminated in submitting the declaration to the jury, on the ground that statements in a dying declaration must be "confined exclusively to the matters which happened at the time that the death took place and the thing that caused the death. Matters which took place prior to that, which are not properly part of the *res gestœ,* are not admissible in a dying declaration.  The court permitted the whole declaration to be read to the jury against the objection of the defendant.

(1)   We think that the submission to the jury of the concluding portion of the dying declaration was error.  We do not think that it can be reasonably said that the language used refers to matters which are a part of the *res gestœ.*  The indictment under consideration charges the defendant with aiding, assisting and counseling an abortion.  The language now under consideration evidently refers to the defendant as being the person responsible for the pregnancy.  Pregnancy is not necessarily or customarily followed by an attempt to procure an abortion.  Carnal knowledge and abortion are distinct offences and furnish the basis for separate indictments, as in the case now before us.  There is no association between the carnal knowledge, resulting in pregnancy, and the abortion procured two months later, resulting in death, which could make the former a part of the *res gestœ.*  The authorities are practically unanimous

that evidence of dying declarations should be restricted to the act and the circumstances immediately attending it and forming a part of the *res gestæ* and that they are not admissible to prove former or extrinsic transactions. A few of the many cases supporting this doctrine may be cited. *Leiber* v. *Commonwealth,* 9 Bush (Ky.) 11; *Hays* v. *The State,* 40 Md. 633; *The State* v. *Baldwin,* 79 Iowa 714; *Warren* v. *The State,* 9 Tex. App. 619; *Hackett* v. *The People,* 54 Barb. 370; *Montgomery* v. *The State,* 80 Ind. 338; *The State* v. *Moody,* 18 Wash. 165. See also *Worthington* v. *State* and *Harper* v. *State,* 56 L. R. A. pp. 353 and 372 and notes.

We are aware that there is substantial authority for the introduction of testimony, in cases of abortion, to the effect that the defendant was responsible for the pregnancy in order to show a motive for the procurement of the operation. In all of these cases however the woman survived the operation and appeared as a witness against the defendant, and was of course subject to cross-examination. We do not find any case where statements in a dying declaration regarding matters outside of the *res gestæ* have been held admissible for the purpose of showing the motive of the defendant.

The rule excluding from dying declarations any statement outside of the *res gestæ* appears to have been rigidly enforced by substantially all the courts of this country.

We think that the defendant's seventh exception must be sustained and that the sixth exception must be sustained in so far as it relates to the admission of that part of the dying declaration which is made the subject of the seventh exception. The other exceptions of the defendant to the indictment 9001 do not seem to us to set forth any reversible error and they are therefore overruled.

(2) In the matter of the second indictment, numbered 9002, in which the defendant is charged with carnal knowledge of Dorothy V. Hughes, the question of the dying declaration is not directly involved. In its charge, the trial court expressly instructed the jury that they were not entitled to and could not use the testimony of the dying declaration in ascertaining

the guilt or innocence of the defendant under that indictment for the reason that the law does not permit the use of a dying declaration in a case of that character. The two cases were tried together at the request of the defendant and apparently with the consent of the State. The dying declaration was offered by the State and admitted in evidence for the purpose of proving that the defendant was guilty of aiding and counseling an abortion, a crime of which he was charged in an indictment separate from the one now under consideration. The evidence thus brought to the minds of the jury, through the introduction of the dying declaration, was in part inadmissible in one case and wholly inadmissible in the other. To be sure the trial judge instructed the jury that they must not consider the declaration in connection with the indictment charging carnal knowledge but it does not seem to us that even with that instruction the members of the jury would be able to completely stifle their recollection of the matters set forth in the declaration or altogether eradicate from their minds the influence which a knowledge of such matters would be likely to produce. The failure to exclude the concluding portion of the dying declaration, in the abortion case, was particularly unfortunate in view of the fact that such portion referred to the offence charged in the other indictment. We think that the defendant's first exception in the case of the indictment numbered 9002 must be sustained. We cannot say that the defendant has had a fair trial in either case and we therefore feel compelled to grant him a new trial in each of them.

The cases are remitted to the Superior Court with direction to give the defendant a new trial in each case.

*Antonio A. Capotosto, 2nd Asst. Attorney General,* for State.
*Joseph H. Coen,* for defendant.